## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**ANGELA DANIEL**                                                              **PLAINTIFF**

**V.**                                          **CIVIL ACTION NO.  3:13CV922 HTW-LRA**

**CAROLYN W.  COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**                      **DEFENDANT**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Angela Daniel appeals the final decision denying her applications for

Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  The

Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final

decision of the Administrative Law Judge.  Having carefully considered the hearing

transcript, the medical records in evidence, and all the applicable law, the undersigned

recommends that the decision be affirmed.

### Factual and Procedural Background

On June 8, 2007, Daniel filed applications alleging she became disabled on

January 1, 2006, due to a deformed neck, scoliosis, back, leg, and knee pain, neck

stiffness, vision and hearing problems, depression, and anxiety disorder.  She was 31

years old at the time of filing, and has a high school education.  Her past work experience

included cashier, fast-food worker, shift leader in the fast-food industry,

homemaker/home health agency, shipping/packaging packager, and babysitter.  The

applications were denied initially and on reconsideration.  Daniel appealed the denial and

on March 8, 2010, Administrative Law Judge Wallace E. Weakley ("ALJ") rendered an unfavorable decision finding that Plaintiff had not established a disability within the meaning of the Social Security Act.  The Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the case under the substantial evidence provisions of 20 C.F.R. § § 404.970 & 416.1470.  In compliance with the remand order, the ALJ obtained additional evidence and conducted a second administrative hearing before rendering a second unfavorable decision on December 2, 2011.  The Appeals Council denied Plaintiff's second request for review.  She now appeals that decision.[1]

Upon reviewing the evidence, the ALJ concluded that Plaintiff was not disabled under the Social Security Act.  At step one of the five-step sequential evaluation,[2] the ALJ found that although Plaintiff worked after her alleged onset date, the work did not rise to the level of substantial gainful activity.  At steps two and three, the ALJ found that although Plaintiff's torticollis, scoliosis, back pain, and right side disc bulge were severe, they did not meet or medically equal any listing.  At step four, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary work, except:

---

[1]ECF No. 9, pp.  38, 247.

[2]Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform?  *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

2

she is limited to 45 degrees of movement of head from side to side.  She can occasionally bend and kneel.  She is limited to walking a maximum of 25 feet at a time.  She requires a sit/stand option.  She can sit up to 15 minutes and stand up to 20 minutes at a time.  She can stand/sit a total of eight hours a day.  She can occasionally climb ramps and stairs.[3]

Based on vocational expert testimony, the ALJ concluded at step five, that given Plaintiff's age, education, work experience, and residual functional capacity, she could perform work as a booth-cashier, ticket-seller, and electrical-assembler.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d at 295 (5th Cir. 1992)).  This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

---

[3]ECF No. 9, p. 20.

**Discussion**

Plaintiff argues that the Commissioner's decision should be reversed or alternatively remanded because the ALJ:  (1) failed to find that her depression, partial hearing loss, and corneal ulcer of the right eye were medically severe impairments at step two of the sequential evaluation; (2) failed to consider all her non-severe impairments in assessing her residual functional capacity; and, (3) failed to properly consider her nurse practitioner's medical source statement.

**1.      Substantial evidence supports the ALJ's severity determination.**

Plaintiff alleges that the ALJ failed to apply the correct legal standard at step two, and as a result, erred in failing to find that her depression, partial hearing loss, and corneal ulcer in her right eye were not severe impairments.  In support, Plaintiff claims the ALJ applied three different severity standards, two of which she contends are inconsistent with the severity standard announced by the Fifth Circuit in *Stone v. Heckler,* 752 F.2d 1099 (5th Cir. 1985).  In *Stone,* the Fifth Circuit confirmed the following to be the  proper legal standard for determining whether a claimant's impairment is severe:  ""[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."' *Id.* at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

While Plaintiff is correct that the ALJ used varying language in analyzing the severity of her impairments, since *Stone*, the Fifth Circuit has cautioned that the critical issue is whether the ALJ applied the slight abnormality standard, not whether he or she recited "magic words." *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986). Despite the inconsistency in phrasing, the ALJ's decision reflects that he both cited and properly analyzed the severity of Plaintiff's impairments in accordance with *Stone*. As set forth below, substantial evidence supports his finding that Plaintiff's depression, vision impairment, and partial hearing loss were not medically severe.

Relative to Plaintiff's vision and hearing problems, medical records indicate that Dr. Jim Adams performed consultative physical examinations in November 2006 and February 2008. In both examinations, Dr. Adams noted that Plaintiff's tympanic membrane was normal in the left ear, but obstructed by earwax in the right ear. Additional testing in 2008 indicated that she also had a conductive problem in her right ear. Although Plaintiff reported that she had been unable to hear out of her right ear since birth, Dr. Adams noted that she was able to hear the spoken word without difficulty during the examination.[4]

With regard to her vision impairments, her examination in 2006 indicated that her visual acuity was 20/50 in both eyes without glasses and her funduscopic examination was normal; she also reported that she used to wear glasses but was no longer wearing

---

[4]ECF No. 9, pp. 396-98.

them.  In 2008, a funduscopic examination yielded normal results on the left eye, but was noted to be "impossible on the right because of a central corneal ulcer causing opacification."  At that time, her uncorrected visual acuity was 20/200 in the right eye and 20/30 in the left eye, and Plaintiff again reported that she did not wear glasses.  There are no records for treatment of any kind from March 2009, until Plaintiff was treated at Total Eye Clinic in February 2011, for a central ulcer scar tissue and a hazy cornea in her right eye.  Her uncorrected visual acuity was 20/200 in the right eye and 20/40 in the left eye, and glasses were prescribed.  Plaintiff later confirmed at the administrative hearing that the glasses helped with her left eye, but testified that they did not help with her right eye.  Significantly, she also testified that she left her glasses at home.[5]

Despite her visual and hearing impairments, Plaintiff failed to establish that they would affect her ability to perform basic work activities.  The ALJ observed no vision or hearing problems at the administrative hearing.  *Falco v. Shalala*, 27 F.3d 160, 164 n.18 (5th Cir. 1994) ("The ALJ enjoys the benefit of perceiving firsthand the claimant at the hearing.").  The record also indicates that she had a valid driver's license and continued to drive until she received a DUI in the months preceding her second administrative hearing.  She also attends to her personal hygiene, raises her five-year old son, and in her spare time, watches television, uses the computer, and reads until she loses interest.  She also returned to work for a period of time after her alleged onset date despite her decreased

_____

[5]ECF No. 9, pp. 396-98.

vision.  Although Plaintiff testified that glasses helped only with her left eye, she offered

no evidence that her vision was uncorrectable in her right eye.  *See Fraga v. Bowen*, 810

F.2d 1296, 1305 (5th Cir.1987) (holding claimant did not meet burden to prove his

impaired vision constituted severe impairment where claimant offered "no evidence . . .

he could not obtain glasses that would fully correct his vision").  Even uncorrected, the

evidence fails to establish that Plaintiff's visual impairment would interfere with her

ability to perform sedentary work within the residual functional capacity assessed by the

ALJ.  *See Stone*, 752 F.2d at 1101.  She also worked continuously for nearly 10 years

before filing for disability, and she does not allege, nor does the evidence support, that the

hearing loss in her right ear has ever *interfered* with her work in the past.

Substantial evidence also supports the ALJ's finding that Plaintiff's depression

was not severe.  In December 2007, Dr. Thomas Elliot performed a consultative

psychological examination, and diagnosed Plaintiff with "depressive disorder, not

otherwise specified, mild, versus postpartum depression or both; and, anxiety disorder,

not otherwise specified."  During the examination, Plaintiff advised Dr. Elliot that she had

become depressed "within the last year or so," and had recently began taking Paxil, which

helped.  She acknowledged that she had not seen a mental health specialist, but stated that

she had called to schedule an appointment.  However, she later testified that she never

made an appointment.[6]

On examination, Dr. Elliot observed that Plaintiff had average self-esteem, with no evidence of any suicidal or homicidal ideation, hallucinations, or delusions.  She averaged six hours of sleep per night, and was able to attend to her personal needs, raise her son, and spend time with friends.  She also watched television, used the computer, and cleaned her house some.  On further examination, Dr. Elliot found Plaintiff to be mildly depressed but noted that her pain was not correlated with her depression.  When asked how her depression prevented her from working, Plaintiff responded that she has "decreased concentration" and "worries about everything" so much that she would be unable to work at least one day per week.  Yet, with regard to memory and concentration, Dr. Elliot noted that Plaintiff's remote and recent memories were both fairly well intact.  She was able to recall and repeat objects and digits forwards and backwards.  She could also identify the current and prior presidents of the United States, as well as the current governor.  She was also alert, oriented, cooperative, and related well during the examination.

Notwithstanding this evidence, Dr. Elliot concluded that Plaintiff "could probably relate well with a supervisor and coworkers on given days," but she would probably be disruptive at other times.  He also opined that she would be able to perform simple routine tasks, but would "probably not attend work regularly."[7]

---

[6]ECF No. 9, pp. 367-371.

[7]*Id.*

8

An ALJ is free to reject any medical opinion, in whole or in part, when good cause is shown.  Good causes exists when the evidence supports a contrary conclusion, when the opinions are conclusory, or when they are unsupported by medically acceptable clinical, laboratory, or diagnostic techniques.  *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172 (5th Cir. 1995).  In analyzing the severity of Plaintiff's depression, the ALJ provided the following good cause for assigning Dr. Elliot's conclusions minimal weight:

> . . . . Little weight has been given to this opinion, as there is nothing in the report that would indicate that she would disrupt supervisors and coworkers and Dr. Elliot does not explain this conclusion.  She reported she had never been fired from a job and she gets along well with her family and friends.  His statement that she would not attend work regularly is based on her assertion that she would do so, not on any finding in his evaluation.  She did work in 2010 and she did not mention missing any days.  She has only received treatment for her depression from her treating physician.  She testified that her medication helped and she did not go to counseling.  She is able to care for herself and her son.[8]

Plaintiff does not dispute the ALJ's sound reasoning, nor does she cite medical evidence to the contrary.  Although she complains that the ALJ discounted Dr. Elliot's opinion that she would have difficulty interacting with supervisors and coworkers and would regularly miss work, "there is no longitudinal medical evidence in the record to support this opinion."  *Bayer v. Colvin*, No. 13-30524, 2014 WL 541294, at *8 (5th Cir. Feb. 12, 2014).  Medical records confirm that antidepressants were prescribed by her treating physician, but she has never been treated by a mental health professional, and frequently

---

[8]ECF No. 9,  p. 19.

exhibited a normal mood and affect in her examinations.  The ALJ's reasons for rejecting Dr. Elliot's conclusions are well-supported.

The ALJ also assigned less than significant weight to the Psychiatric Review Technique form submitted by a state agency psychologist in January 2008, because it was internally inconsistent and contrary to the evidence as a whole.  Upon reviewing the medical evidence, the psychologist opined that Plaintiff did not have a severe mental impairment.  Contrary to Dr. Elliot's opinion, the consultant noted that while Plaintiff appeared to have some problems with social interactions because of depression, anxiety, and psychosocial stressors, she appeared to be able to interact appropriately with supervisors and co-workers and adapt to a work setting.  Functionally, the consultant noted that Plaintiff was mildly limited in her activities of daily living and social functioning, but was moderately limited in her ability to maintain concentration, persistence or pace.  But as noted by the ALJ, "[a] finding of moderate limitation is not consistent with a not severe mental impairment."  Social Security regulations provide that "[i]n psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits."  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00C(3).  Nothing of record indicated that Plaintiff had more than a mild limitation with regard to concentration and attention.  Although Dr. Elliot indicated that Plaintiff's statements appeared to be fairly reliable, his examination findings revealed that Plaintiff's recent and

remote memories were intact.  The consultant similarly concluded that Plaintiff could perform simple, routine, repetitive tasks with adequate concentration and attention.  As further observed by the ALJ, the only problem Plaintiff reported with regard to concentration was that she loses interest when she reads.[9]

It is within the ALJ's discretion to determine the credibility of medical experts and to weigh their opinions accordingly.  Contrary to what Plaintiff argues, the ALJ rejected neither Dr. Elliot's or the state agency psychologist's opinion in its entirety.  He incorporated them only insofar as they were supported by their findings and consistent with the evidence as a whole.  Given the evidence and lack of mental health treatment, the ALJ reasonably concluded that, like her vison and hearing problems, Plaintiff's depression was not severe.  "The fact that there may have been some contrary evidence in the record to support a finding that [Plaintiff's depression] was a severe impairment does not undermine the ALJ's determination."  *Bayer,* 2014 WL 541294, at *6.  Substantial evidence supports his finding that Plaintiff was only mildly limited in activities of daily living, social functioning, and concentration, persistence and pace, with no episodes of decompensation.

Even if the ALJ erred as Plaintiff argues, the failure to make a severity finding at step two alone is not grounds for reversal or remand.  *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir.  1987).  "*Stone* merely reasons that the [severity] regulation cannot

---

[9]ECF No. 9, pp. 20, 367-71, 378-95.

be applied to summarily dismiss, **without consideration of the remaining steps in the sequential analysis**, claims of those whose impairment is more than a slight abnormality." *Loza v. Apfel*, 219 F.3d, 378 391 (quoting *Anthony*, 954 F.2d at 294) (emphasis added).[10]  Plaintiff's claims were not summarily dismissed at step two here. *See Herrera v. Astrue,* 406 F. App'x 899, 903 (5th Cir.  2010) (declining to remand where "case did not turn on a finding that [plaintiff's] impairments were not severe at step two"). In compliance with controlling law, the ALJ proceeded with the sequential evaluation, and substantial evidence supports his overall finding that none of Plaintiff's impairments, alone or in combination, would preclude her from performing sedentary work subject to the limitations of her residual functional capacity.

### 2. The ALJ properly considered all of Plaintiff's impairments in determining Plaintiff's residual functional capacity.

As her next assignment of error, Plaintiff alleges that the ALJ's residual functional capacity assessment is not supported by substantial evidence because it fails to incorporate functional limitations resulting from her non-physical impairments, i.e., her depression, partial hearing loss, and corneal ulcer in the right eye.  However, a neutral reading of the ALJ's assessment reflects a narrative discussion of Plaintiff's ability to do

---

[10]*See also Jones v. Astrue*, 851 F.Supp.2d 1010, 1018 (N.D. Tex. 2012) ("The post-*Stone* decisions of the Fifth Circuit convey the message that the *Stone* "remand" directive did not do away with the Fifth Circuit's harmless-error policy, and that a remand is not required merely because an administrative law judge committed a *Stone* error–that is, if the administrative law judge makes his decision of nondisability at a step subsequent to step two, an error in the form of a failure of the administrative law judge to apply the *Stone* severity standard at step two will not, standing alone, be ground for reversal and remand. ").

sustained work-related activities in an ordinary work setting on a regular continuing basis in compliance with Social Security Ruling 96-8p, 1996 WL 374184, at *1, 3.  20 C.F.R. § 404.1546(c) (2009).  SSR 96-8p provides that residual functional capacity is a function-by-function assessment of an individual's ability to do sustained work activities on a regular and continual basis.  1996 WL 374184, at *1, 3.  The assessment "considers only functional limitations and restrictions that result from an individual's medical impairment or combination of impairments.  *Id.*  at *1.  SSR 96-8p also provides that: "When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, **and no information in the case record that there is such a limitation of restriction**, the [ALJ] must consider the individual to have no limitation or restriction with respect to that functional capacity."  *Id.*  (emphasis added).

As noted *supra,* in determining that Plaintiff's partial hearing loss, corneal ulcer of the right eye, and depression were not severe at step two, the ALJ throughly considered their resulting limitations.  Relative to Plaintiff's partial hearing loss, the ALJ expressly noted that "[w]hile the claimant does have some limitation as a result of her congenital defects, there is nothing in the record that would indicate she would be unable to perform work within the determined residual functional capacity."[11]  The evidence also failed to establish that her vision impairment produced any functional limitations that exceeded her residual functional capacity.  And, as the ALJ's analysis makes clear, the evidence did not

---

[11]ECF No.  9, p. 23.

substantially support Plaintiff's claim that her depression was of disabling severity.  While the record documents complaints of depression, it contains no evidence that her depression has more than a minimal effect on her physical or mental ability to do basic work activities.  *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) ("The mere presence of some impairment is not disabling per se.").

Based on the evidence as a whole, the ALJ concluded that Plaintiff had the residual functional capacity to perform sedentary work except:

> she is limited to 45 degrees of movement of head from side to side.  She can occasionally bend and kneel.  She is limited to walking a maximum of 25 feet at a time.  She requires a sit/stand option.  She can sit up to 15 minutes and stand up to 20 minutes at a time.  She can stand/sit a total of eight hours a day.  She can occasionally climb ramps and stairs.[12]

In making this determination, the ALJ found that Plaintiff's subjective complaints about the intensity, persistence, and limiting effects of her impairments were not entirely credible.  When a claimant's statements concerning the intensity, persistence or limiting effects of symptoms are not supported by objective evidence, the ALJ has the discretion to make a finding on their credibility.  *Foster v. Astrue*, 277 F. App'x. 462 (5th Cir. 2008).  The ALJ's credibility findings are entitled to considerable deference and should not be disturbed here.

Plaintiff testified that she experiences constant unremitting back pain everyday that worsened after she gave birth to her son in January 2006, and was further aggravated

---

[12]ECF No.  9, p. 20.

when she pulled a muscle picking him up in March 2009.  As a result, she testified that

she has difficulty bending over, and standing or sitting for long periods of time.  She also

cannot walk very far and has swelling and numbness in her right knee and leg.  She

testified that she sees her regular doctor every two months and was last seen by a doctor

to get her prescriptions refilled.  She acknowledged that the pain medication prescribed

for her back has helped some, but testified that it does not completely stop it.  She also

testified that she has crying spells, and blurred vision and headaches because of the

corneal ulcer in her right eye, but acknowledged that she is able to her attend to her

personal hygiene, raise her son, watch television, read, use the computer, shop, and

perform some household chores.  She also acknowledged that she stopped driving

because of a DUI, not because of her vision impairments; and, she admitted that she

could not confirm whether her babysitting earnings in 2010 were correct because she did

not prepare or sign the income tax return.[13]

In assessing Plaintiff's credibility, the ALJ found that her medically determinable

impairments could reasonably be expected to produce some of these alleged symptoms,

but her testimony regarding the intensity, persistence, and limiting effects were not fully

credible.  He made the following observations:

> The claimant alleged problems since birth; however, she worked
> continuously from 1994 until December 31, 2005, when she went on
> maternity leave.  She did return to work in June 2006 and worked part-time

---

[13]ECF No. 9, pp. 31-77.

for a while. She worked again in 2010 for a couple of months babysitting. The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. She has alleged January 1, 2006, as [an] onset date. The only medical [evidence] from January and February 2006 is related to her pregnancy with no mention of any other problems. There is no other medical [evidence] until November 2006 and that was a consultative examination performed at the request of the state agency. Treatment in 2007 and 2008 was minimal. There is no indication of any treatment from March 4, 2009, until February 25, 2011, and that was an eye examination. She did not seek treatment for her back until March 2011. That is a gap of two years. She has reported her medication helps and she has not alleged any side effects. She cares for her young son and does housework. While the claimant does have some limitation as a result of her congenital defects there is nothing in the record that would indicate she would be unable to perform work within the determined residual functional capacity.[14]

Plaintiff does not dispute this evidence or the ALJ's analysis on appeal. She maintains simply that her own testimony and subjective complaints support a finding of greater functional limitations than those assigned by the ALJ. Yet, notwithstanding her initial testimony, when questioned further by the ALJ, Plaintiff acknowledged that she could sit or stand for approximately 10-15 minutes at time; walk approximately 20-25 feet, and bend from the waist, all of which are clearly reflected in the ALJ's residual functional capacity assessment.

The sole responsibility for determining a claimant's residual functional capacity rests with the ALJ and there is substantial evidence to support both his residual functional capacity determination and adverse credibility findings in this case. 20 C.F.R. § 404.1546(c) (2010).

---

[14]ECF No. 9, p. 23.

### 3. The ALJ properly considered the nurse practitioner's medical source statement.

As her final point of error, Plaintiff argues the ALJ erred in failing to adopt the medical source statement submitted by her nurse practitioner, Tonia Holley, FNP, from Fairchild-Clearman Medical Associates.  In July 2011, Nurse Holley completed an assessment form of Plaintiff's ability to do basic work activities.  She opined that based on MRI results obtained in March 2011, Plaintiff could lift and carry no more than 10 pounds on a frequent or occasional basis, and could stand, walk, and sit for no more than 2 hours in an 8-hour workday.  She also opined that she would need to alternate sitting, standing, and walking every 10 minutes, and would need to shift positions and lie down at unpredictable intervals.  She additionally opined that Plaintiff had manipulative limitations and postural limitations that would be occasionally limiting.  She went on to conclude that these limitations would cause Plaintiff to miss work three times per month.[15]

At the outset, the ALJ correctly noted that Nurse Holley is not an "acceptable medical source" under 20 C.F.R. § 404.1512, and as such, her opinions are not entitled to the same deference as a treating physician.  *Porter v. Barnhart*, 200 F. App'x 317, 319 (5th Cir. 2006).  Her medical source statement was also inconsistent with the objective medical evidence generated by Plaintiff's treating physicians.

---

[15]ECF No.  9, pp.  430-434.

Medical records from Fairchild-Clearman Medical Associates from March 2011 through July 2011, document Plaintiff's diagnoses for low back pain, scoliosis, neck pain, torticollis, sciatic nerve irritation, and degenerative changes in her lumbar spine. However, the records fail to establish impairments that produced limitations to the degree assessed by Nurse Holley.  An initial assessment from Fairchild-Clearman Medical Associates in March 2011 reflects that Plaintiff complained of numbness in her left hand and pain in her back, neck, and shoulder.  The MRI of her lumbar spine revealed lumbar scoliosis; a chronic partial L1 compression fracture; facet and ligamentum flavum hypertrophy with mild lateral recess stenosis; and, multiple levels of degenerative changes throughout her lumbar spine.  Subsequent examinations conducted by Dr. H. Fairchild indicated that Plaintiff had normal neurological and musculoskeletal findings, and that she primarily complained of depression for which she frequently sought prescription changes.  As treatment, she was counseled on medication compliance, diet and exercise, and referred to physical therapy, but records indicate that she never followed through.[16]

In May 2011, Plaintiff was examined by Dr. David Malloy for bilateral lower extremity discomfort and back pain.  She reported that she had bilateral pain radiating from her lower back to her upper thighs and legs, which worsens when she stands or walks but is made better when she rests or changes positions.  Plaintiff advised that she

---

[16]ECF No. 9, pp. 440-450.

experiences pain on a daily basis, and rated it as a 6 on a scale of 1-10.  On examination, Dr. Malloy noted that she was in no acute distress and was neurologically intact.  She had normal strength and sensory in her upper and lower extremities, with no clubbing, cyanosis, or edema.  Dr. Malloy opined that the "bulk of her symptoms appeared to be mechanical in nature, likely a manifestation of spondylosis and degenerative change superimposed on her long-standing scoliosis."  He saw no need for surgical intervention and recommended physical therapy for symptomatic treatment, but as noted *supra*, records indicate that Plaintiff never followed through.[17]  It is well established that an ALJ may consider a claimant's failure to follow prescribed treatment as an indication of non-disability.  *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir.1990).

Given the evidence, the ALJ had good cause to assign Nurse Holley's medical source statement little weight.  Contrary to her assessment, neither Dr. Malloy nor Dr. Fairchild opined that Plaintiff's impairments would impact her ability to perform work-related activities beyond the limitations indicated in the ALJ's residual functional capacity assessment.  *See Bordelon v. Astrue*, 281 F. App'x 418, 422 (5th Cir. 2008) (distinguishing between diagnosed impairments and functional limitations caused by those impairments).  The record is also devoid of any objective clinical and diagnostic findings establishing impairments that could be reasonably expected to produce the degree of limitations she assigned.  The mere fact that working may cause Plaintiff pain

---

[17]ECF No. 9. pp. 437-439.

or discomfort does not mandate a finding of disability, particularly where substantial evidence indicates that she can work despite being in pain or discomfort, as it does here. *See Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980); *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985).

The undersigned's review of the record compels a finding that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.  For these reasons, it is the opinion of the undersigned United States Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking

on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective

December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415,

1428-29 (5th Cir. 1996).

      This the 6th day of August 2014.

/s/  Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE